UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL PAYETTE,

    Plaintiff,                                   CASE NO. 04-CV-10294

v.                                            DISTRICT JUDGE DAVID M. LAWSON
                                              MAGISTRATE JUDGE CHARLES BINDER

ROYAL OAK POLICE DEPARTMENT,
BRIAN ZELAKIEWICZ, Police Officer,
KENNETH BEAN, Police Officer,
JAMES STEHLIN, Police Officer,
R. SPELLMAN, Police Officer,
D. WELCH, Lt. Police Officer,
B. SAWYER, Police Officer,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
(Dkt. 17)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED** and that the case be dismissed with prejudice.

## II.   REPORT.

### A.   Introduction

By order of United States District Judge David Lawson, this *pro se* case brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 was referred to the undersigned Magistrate Judge for pretrial case management on November 16, 2004. Plaintiff Michael Payette is a state prisoner currently

confined at the Ionia Maximum Correctional Facility in Ionia, Michigan. The civil rights claims he asserts are not related to his conditions of confinement, however, but rather to the events surrounding his arrest in October 2002 and subsequent prosecution. Defendants filed the above-entitled motion on January 28, 2005, and Plaintiff filed a response on April 19, 2005, after being granted an extension of time. Defendants submitted a reply on May 5, 2005. Pursuant to Eastern District of Michigan Local Rule 7.1(e)(1), the motion is ready for report and recommendation without oral argument.

**B.     Factual Background**

Plaintiff Payette's *pro se* complaint asserts that at approximately 6:00 a.m. on October 25, 2002, he took a taxi cab to the Kingswood Motel in Royal Oak, Michigan, to visit a friend who was staying there. Plaintiff alleges that when he left the hotel room, Defendant Brian Zelakiewicz, a police officer with the Royal Oak Police Department ("ROPD"), snuck up behind him and "grabbed Plaintiff's shoulder with severe force, acting upon a 'pressure point,' needlessly causing plaintiff severe pain." (Dkt. 1, Compl., Stmt. of Facts ¶¶ 11-13.) Plaintiff asserts that Defendant Zelakiewicz then ordered him into a deserted alley and slammed his head against a police car, warning him to stay still or he'd be dead. Next, alleges Plaintiff,

> Defendant Zelakiewicz proceeded to allow Plaintiff to turn around, and told Plaintiff he <u>thought</u> Plaintiff was under investigation. When Plaintiff informed Defendant Zelakiewicz [that] he clearly was <u>not</u> under any investigation, and the only investigation was going to be on him by his superiors[,] Defendant Zelakiewicz became enraged, slammed his body into Plaintiff knocking Plaintiff back approximately 2 feet, then immediately reached into Plaintiff's pocket. When Plaintiff asked him what he was doing, Defendant Zelakiewicz proceeded to viciously, repeatedly smash his elbow and forearm into Plaintiff's head and face, then grabbed Plaintiff's shirt and slammed Plaintiff to the ground, and savagely jumped on; grabbed Plaintiff's head by the hair, and bashed Plaintiff's face into the concrete, chipping Plaintiff's tooth, and busting his mouth. At no time was Plaintiff resisting, fighting or posing any threat to Defendant Zelakiewicz.

(Compl. ¶ 17.) Plaintiff states that he was terrified, in fear for his life, and began yelling for help. Another ROPD officer, Kenneth Bean, arrived on the scene. Plaintiff contends that Defendant Bean assisted Defendant Zelakiewicz in dragging Plaintiff to his feet, all the while continuing to assault him and threatening to "stomp his guts out" if he didn't stop yelling for help. When Plaintiff refused to stop yelling, Defendant Bean allegedly applied "Police Nun-chucks"[1] over the handcuffs, causing Plaintiff severe and agonizing pain. (*Id.* ¶ 22.)

Plaintiff states that Defendants Stehlin and Spellman, also ROPD officers, arrived next. Plaintiff alleges that they smashed him down on the police car and Defendant Stehlin kicked him in the legs and right knee. Plaintiff further asserts that:

> [a]fter Defendants finally stopped assaulting Plaintiff, Plaintiff asked why he was being arrested. Defendant Zelakiewicz claimed [Plaintiff] was being arrested "for drug paraphernalia."
>
> Defendants Bean, Stehlin and Spellman proceeded to agree with Defendant Zelakiewicz, indicating their meeting of the minds to falsely arrest and maliciously charge Plaintiff with a crime they knew Plaintiff was not guilty of!

(*Id.* ¶¶ 24-25.) When Plaintiff accused the officers of lying, Defendant Stehlin allegedly responded by kicking Plaintiff in the leg, squeezing the nunchucks tighter, and forcing him to the ground. After standing him up again, one of the officers grabbed Plaintiff by the back of his head and slammed his head into the door jamb of the police car while the other officers laughed. Plaintiff claims that he was then held in Defendant Zelakiewicz's patrol car for about ten minutes while the four officers "conspired as to what false charges they would charge Plaintiff with in order to usurp an investigation into their malfeasance, and wrongful actions." (*Id.* ¶ 29.) Plaintiff states that he heard the defendants talking about how easy it would be to "just do him, and dump his body in a

---

[1] "'Nunchaku,' also known as 'nunchucks,' is an Oriental martial arts weapon comprised of two pieces of wood or steel connected by a cord or chain which can be held in the hands. It had its origin as a farm implement in Okinawa." *United States v. George*, 778 F.2d 556, 558 n.1 (10th Cir. 1988).

3

trash can in niggersville," (*id.* ¶ 30), and so he "decided the only way to assure Defendants did not kill him, was to kick out the car window, thus causing Defendants to have to have some arrestee to account for the damage." (*Id.* ¶ 31.)

When Plaintiff kicked out the patrol car window, Defendant Zelakiewicz stopped the car and pepper-sprayed Plaintiff through the broken window, and Defendant Stehlin allegedly opened the car door and punched Plaintiff in the stomach repeatedly. Plaintiff was transferred to Defendant Stehlin's patrol car, and Plaintiff claims that during the transfer one of the officers tightened his handcuffs so that all circulation was cut off at his wrists. Further, he alleges that Defendants Zelakiewicz and Stehlin twisted and bent his wrists so hard that by the time they arrived at the police station he was half out of his mind in pain and "again kicked out a patrol car window as a means to resist and protest his illegal arrest and sufferings at the hand of the defendants." (*Id.* ¶ 39.) Plaintiff adds that, "with the exception of kicking out the car window, [he] was not either upsetting or disruptive," and yet he was pepper-sprayed a second time by one of the officers.

Upon arriving at the police station, Plaintiff saw Lieutenant Welch and informed him that he had been seriously injured by the officers and that he thought his wrists or arms might be broken. Instead of helping him, however, Defendant Welch allegedly let the other officers forcibly place Plaintiff over the patrol car and apply the nunchucks again to his already-injured wrists. Plaintiff claims that when he tried to explain to Defendant Welch that these officers had sadistically beaten and arrested him for no reason, Defendant Zelakiewicz's face became red with anger, he gritted his teeth, and in his outrage he reached over and squeezed the nunchucks more, causing Plaintiff even more agonizing pain. (*Id.* ¶¶ 44-45.) Defendant Welch allegedly observed this, and yet he did not take any action.

Plaintiff further alleges that, as he was being processed, the defendants told him that they were the police and therefore they could do whatever they wanted to do. When Plaintiff replied that he intended to report them for their actions, they allegedly ripped off all of his clothes, dragged his naked body into a dirty cell, and left him there with open wounds which were bleeding profusely. He claims he did not get any medical attention for hours. Eventually, a fireman came to look at Plaintiff's wrist and determined that Plaintiff needed to be taken to the hospital.

As a result of this early-morning encounter, Plaintiff was charged with two counts of assaulting, resisting, or obstructing an officer,[2] and two counts of maliciously destroying or injuring the personal property of a police department.[3] Plaintiff claims that at his preliminary hearing in November 2002, Defendants Zelakiewicz, Bean, and Stehlin all lied on the witness stand when they testified that Plaintiff assaulted them and resisted arrest. (*Id.* ¶ 64.) In January 2003, Plaintiff went to trial on all four counts and the jury found him not guilty of the two assaulting and resisting charges and guilty of the two malicious destruction of property charges. In March 2003, he received a sentence of two to fifteen years in prison. (*Id.* ¶¶ 60-61.) On appeal, his convictions were affirmed by the Michigan Court of Appeals. *Michigan v. Payette*, No. 247652, 2004 WL 2050553, at *1 (Mich. Ct. App. Sept. 14, 2004) (unpublished) (attached to Plaintiff's Response, Dkt. 22).

---

[2]The Michigan statute under which Plaintiff was charged provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." MICH. COMP. LAWS § 750.81d(1).

[3]The statute provides that "[a]ny person who shall wilfully and maliciously destroy or injure the personal property of any fire or police department, including the Michigan state police, shall be guilty of a felony." MICH. COMP. LAWS § 750.377b.

5

Approximately one month later, on October 22, 2004, Plaintiff commenced the instant lawsuit against the Royal Oak Police Department and officers Zelakiewicz, Bean, Stehlin, Spellman, Welch, and Sawyer, asserting claims of false arrest, conspiracy to commit false arrest, malicious prosecution, assault and battery, abuse of process, libel, slander, defamation of character, and intentional infliction of emotional distress.

On November 2, 2004, he filed his appeal of the decision by the Michigan Court of Appeals with the Michigan Supreme Court. Approximately seven months later, on May 31, 2005, the Michigan Supreme Court denied Plaintiff's application for leave to appeal. *See Michigan v. Payette*, No. 127354, 697 N.W.2d 153 (Table) (Mich. 2005).

**C.     Defendants' Motion**

Defendants make the following arguments in their motion for summary judgment: (1) Defendant Royal Oak Police Department is not a proper party; (2) this Court is barred from reviewing Plaintiff's § 1983 claims of false arrest, conspiracy to commit false arrest, and malicious prosecution pursuant to the *Rooker-Feldman* doctrine and/or the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); (3) the individual defendants are absolutely immune from suit for any claims arising out of their testimony against Plaintiff; (4) the individual defendants are entitled to qualified immunity with regard to Plaintiff's claims of false arrest; (5) Plaintiff has failed to state a valid claim of conspiracy; (6) Plaintiff has failed to state a claim of malicious prosecution; (7) Plaintiff has failed to state a valid claim of abuse of process; (8) Plaintiff's defamation claims are barred by the applicable one-year statute of limitations. (Dkts. 17 & 24.)

### D. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). Summary judgment is not to be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### E. Analysis and Conclusions

#### 1. Defendant Royal Oak Police Department

Counsel for defendants asserts that the Royal Oak Police Department should be dismissed because it is not a properly named party. (Dkt. 17, Br. in Supp. at 4.) I suggest that counsel is correct. The federal courts have long recognized that, in Michigan, a police department is not a legal entity capable of being sued. *See Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich.

1997) ("the police department is not a legal entity against whom a suit can be directed"); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 803 F. Supp. 1251, 1256 (E.D. Mich. 1992) (same); *Moomey v. Holland*, 490 F. Supp. 188, 190 (W.D. Mich. 1980) (same). Accordingly, I recommend that Defendant Royal Oak Police Department be dismissed from the suit.

### 2. Federal Claims Against the Individual Defendants

Section 1983 creates a federal cause of action against state and local officials who, while acting under the color of state law, deprive an individual of a right secured to him by the Constitution or federal law. 42 U.S.C. § 1983.[4] A claim under § 1983 consists of two essential elements: (1) the defendant was a person acting under the color of state law; and (2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States of America. *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). In this case, Plaintiff alleges three claims against the individual police officers that implicate federal constitutional rights: false arrest, conspiracy to commit false arrest, and malicious prosecution. Plaintiff asserts in his complaint that

> [a]s a direct result of Defendants' wanton, egregious and nefarious false arrest of Plaintiff, Plaintiff became so frustrated and mentally disturbed, Plaintiff suffered a fit of rage, and kicked out the window of Defendant's police car.

---

[4]The statute provides in pertinent part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

> As a direct result of the above, Plaintiff is now having to spend 4 to 15 years in prison!
>
> Had Defendant's [sic] never falsely arrested Plaintiff, Plaintiff would never have been forced to spend time in prison, nor would Plaintiff have been isolated from the world, unable to watch his children grow or even see his relatives.
>
> Plaintiff lost his job, and income opportunities he would have otherwise enjoyed, as a free man, as a result of his false arrest.

(Compl. at 15, ¶¶ 13-16.) Plaintiff contends that, as a direct result of his false arrest, he was "deprived of his liberty from 10-25-2002 to present." (*Id.* at 17, ¶ 8.)

The U.S. Court of Appeals for the Sixth Circuit has held that when a § 1983 plaintiff brings a claim of false arrest, "[t]he federal constitutional right implicated . . . is the Fourth Amendment right to be arrested only upon probable cause," and the court must "address whether the evidence, when construed most favorably to [the plaintiffs], states a claim that [the defendant] arrested them without probable cause." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579-80 (6th Cir. 2003) (citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (finding that a claim for wrongful arrest turns on whether officer had probable cause under the Fourth Amendment); *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997)). Likewise, Plaintiff's claim of malicious prosecution turns on the question of whether there was "probable cause" under the Fourth Amendment. *McKinley v. City of Mansfield*, 404 F.3d 418, 445 (6th Cir. 2005).

In this case, Plaintiff appealed his state court convictions on the grounds that his initial stop and subsequent arrest were unlawful under the Fourth Amendment, and therefore when he broke the windows of the patrol cars he was not acting maliciously, but merely resisting an unlawful arrest. (*See* State Ct. Br. on Appeal, attached to Pl.'s Resp., Dkt. 22.) The state court ruled as follows:

9

> Defendant was charged with two counts of resisting and obstructing a police officer, MCL 750.81d, and two counts of malicious destruction of police property, MCL 750.377b. Following a jury trial, he was convicted of the two counts of malicious destruction of property, for which he was sentenced as an habitual offender, third offense, MCL 769.11, to concurrent terms of two to fifteen years in prison. Defendant appeals his convictions as of right and we affirm. This appeal is being decided without oral argument pursuant to MCR 7.214(E).
>
> Defendant's sole claim on appeal is that the evidence was insufficient to sustain the verdict. However, defendant does not dispute that the prosecutor presented evidence to establish each element of malicious destruction of police property. Rather, he contends that the initial stop which led to his arrest was unlawful and thus he had a right to use reasonable force to resist by breaking the windows of the police cars. We disagree.
>
> The officer's testimony established a proper *Terry*[1] stop and protective frisk, and a subsequent arrest for assaulting a police officer. Further, the jury was required to find that defendant's intent was malicious in order to convict.
>
> [1]*Terry v. Ohio*, 392 U.S. 1; 88 S. Ct. 1868; 20 L. Ed. 2d 889 (1968).

*Michigan v. Payette*, No. 247652, 2004 WL 2050553, at *1 (Mich. Ct. App. Sept. 14, 2004) (unpublished) (attached to Plaintiff's Response, Dkt. 22).

One month after this decision by the Michigan Court of Appeals, Plaintiff filed the instant civil rights case, asserting once again that his initial stop and subsequent arrest were unlawful.

As mentioned, Defendants now move for summary judgment on several grounds, including that Plaintiff's claims brought under 42 U.S.C. § 1983 are barred by the *Rooker-Feldman* doctrine[5] and the favorable-termination doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). (Defs.' Br. in Supp., Dkt. 17 at 5-6; Defs.' Reply, Dkt. 24 at 2.) I suggest that Defendants are correct that this Court lacks subject matter jurisdiction over

---

[5]The doctrine's name is derived from the cases of *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

10

Plaintiff's § 1983 claims under the *Rooker-Feldman* doctrine. The Supreme Court recently reviewed the doctrine's applicability and stated:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, ___U.S.___, 125 S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005). Lower federal courts also lack jurisdiction to review any federal claims that are "inextricably intertwined" with a state court's decision. *See Feldman*, 460 U.S. at 486-87. A plaintiff's federal claim is inextricably intertwined if the claim can succeed only to the extent that the state court wrongly decided the issues before it. *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998) ("'Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.'") (quoting *Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir.1990)).

That is precisely the situation here: Plaintiff's claims can only succeed to the extent that the state court wrongly decided the issues before it. The state court explicitly held that Plaintiff's initial stop and subsequent arrest were proper under the Fourth Amendment, and Plaintiff now seeks a ruling by this federal court holding that his initial detention was not proper under *Terry*, and that his subsequent arrest was without probable cause. As such, his civil rights suit is an impermissible attempt to appeal the specific findings of the Michigan court.

Alternatively, because Plaintiff's state convictions were affirmed based upon the state court's finding that Plaintiff's Fourth Amendment rights were not violated by his initial detention or subsequent arrest, I suggest that Plaintiff's § 1983 claims that his detention and arrest were in

violation of the Fourth Amendment are barred by the doctrine of *Heck v. Humphrey*. In *Heck*, the Supreme Court held that a claim that calls into question the lawfulness of a conviction or confinement is not cognizable under § 1983. The Court ruled as follows:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Heck*, 512 U.S. at 486-87 (footnotes omitted). This holding applies regardless of whether the plaintiff is seeking injunctive or monetary relief. *Id.* at 489-90. The Court went on to explain the initial inquiry that must be made when such a claim is brought before the federal courts:

> [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (footnotes omitted).

Although a state court conviction for malicious destruction of property would generally not be called into question by a federal court finding that the convicted person was, prior to his commission of the destructive acts, detained and arrested in violation of the Fourth Amendment, I suggest that in this case it would. Plaintiff's conviction and, thus, continued confinement, were affirmed on the grounds of the Michigan appellate court's finding that Plaintiff's Fourth Amendment rights were not violated. Therefore, if Plaintiff were to succeed in his § 1983 claims for false arrest, the validity of his conviction and confinement would necessarily be called into question.

12

Accordingly, I recommend that Plaintiff's federal claims should be dismissed with prejudice for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine or, alternatively, because they are barred by *Heck v. Humphrey*.

### 3.    Remaining State Law Claims

Although Plaintiff does not denominate them as such, his remaining claims of defamation (including libel and slander), intentional infliction of emotional distress, assault and battery, and abuse of process arise under state law. *See Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2005) (explaining that, although a § 1983 plaintiff may be entitled to damages for the emotional anguish caused by an underlying constitutional violation, "[l]ike defamation, intentional infliction of emotional distress, by itself, cannot amount to a constitutional violation."); *Estate of Terry Sowards v. City of Trenton*, 125 Fed. Appx. 31, 43 (6th Cir. 2005) ("Under Michigan law, assault and battery is an intentional tort."); *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 472; 487 N.W.2d 807 (1992) (Under Michigan law, a claim of abuse of process requires the plaintiff to plead and prove: "(1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding.").

However, because I suggest that this Court lacks subject matter jurisdiction over Plaintiff's federal claims, I further recommend that this Court not exercise its discretion to entertain the remaining state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims).

13

## III.    REVIEW.

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


           s/ *Charles E Binder*
           CHARLES E. BINDER
Dated: September 13, 2005           United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on T. Joseph Seward, and served on Michael Payette and District Judge Lawson in the traditional manner.

Date: September 13, 2005           By    s/Mary E. Dobbick
           Secretary to Magistrate Judge Binder